# Federal Defenders
## OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

Tamara L. Giwa
*Executive Director*

Michelle A. Gelernt
*Attorney-in-Charge*

June 9, 2025

By ECF and Email
The Honorable Frederick Block
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    United States v. Corey McTaggart, 25-CR-151 (FB)

Dear Judge Block:

Mr. McTaggart is scheduled to appear before the Court on June 12, 2025, for a status conference. I write to inform the Court that, at that appearance, with the Court's permission, I intend to make a bail application.

Mr. McTaggart stands before the Court charged with one count of Hobbs Act Robbery in violation of 18. U.S.C. § 1951(a). The government alleges that sometime in August 2024, Mr. McTaggart struck a business owner in the face several times and took a sum of United States currency. The government does not allege that a weapon was used or displayed or that the victim sustained serious injuries.

At his initial appearance on May 14, 2025, the defense declined to present a bail package, and the Court entered an order of detention with leave to renew. On May 19, 2025, a detention hearing was held before Magistrate Judge Peggy Kuo, who ordered that Mr. McTaggart be detained. The defense respectfully requests to be heard further at Mr. McTaggart's upcoming status conference. Transcripts of the earlier proceedings, including Magistrate Judge Kuo's oral decision, are attached.

Thank you for your consideration of this request.

Respectfully submitted,

/s/
Kyla Wells
Federal Defenders of New York, Inc.
*Counsel for Corey McTaggart*

cc: all counsel of record (by ECF)

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

```
UNITED STATES OF AMERICA,    .    Docket No.
                             .    1:25-cr-00151-FB-1
        Government,          .
                             .
             v.              .    Brooklyn, New York
                             .    Wednesday, May 14, 2025
COREY MCTAGGART,             .    2:53 p.m.
                             .
        Defendant.           .
                             .
 . . . . . . . . . . . . . .
```

TRANSCRIPT OF ARRAIGNMENT
BEFORE THE HONORABLE JAMES R. CHO
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          U.S. Attorney's Office
                            VINCENT CHIAPPINI, AUSA
                            Eastern District of New York
                            271 Cadman Plaza East
                            Brooklyn, New York  11201
                            718-254-6342

For the Defendant:          Federal Defenders of New York
                            KYLA WELLS, ESQ.
                            One Pierrepont Plaza Building
                            300 Cadman Plaza West
                            16th Floor
                            Brooklyn, New York  11201
                            718-330-1200

Also Present:               Corey McTaggart, Defendant

Transcription Service:      Superior Reporting Services LLC
                            P.O. Box 5032
                            Maryville, TN 37802
                            865-344-3150

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

P R O C E E D I N G S

THE CLERK:  Arraignment, case number 25-cr-00151, United States vs. Corey McTaggart.

Counsel, starting with the Government, please state your appearances.

MR. CHIAPPINI:  Good afternoon, Your Honor. Vincent Chiappini, for the United States.

MS. WELLS:  Federal Defenders by Kyla Wells, on behalf of Mr. McTaggart, who's present.  Good afternoon.

THE COURT:  All right.  Good afternoon, everyone.

To confirm, are you Corey McTaggart?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  I'm Judge Cho.  How are you doing?

THE DEFENDANT:  I'm doing -- I'm doing fine.

THE COURT:  All right. Understood.  Let me explain to you what's going to happen today.  The purpose of today's proceeding is to make sure you understand your rights, what you've been charged with, and determine whether you should be released on bail or held in jail.

I want to remind you have the right to remain silent.  You're not required to make any statement.  If you've made a statement, you don't need to say anything more.

If you start making a statement in the future, you can stop at any time keeping in mind any statement you made

today may be against you.

Do you understand all that?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  You also have the right to a lawyer.  If you can't afford one, the Court will appoint one for you.

Felix, do we have a financial affidavit?

THE CLERK:  I believe Pretrial Officer's going to be bringing it in shortly.

THE DEFENDANT:  Hopefully.

THE COURT:  Okay.

THE DEFENDANT:  Hopefully, Your Honor.

THE COURT:  All right.  We'll proceed at this time, all right?  But I am expecting a financial affidavit from Pretrial Services.

All right.  Mr. McTaggart, I want to advise you you've been charged by a grand jury with the following two counts.  Count One:  Hobbs Act, robbery, and conspiracy.  And Count Two:  Hobbs Act, robbery.  There are forfeiture allegations as well.

Have you received a copy of this indictment, or has Ms. Wells explained it to you?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Have you had a chance to discuss the charges with Ms. Wells?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Do you understand the basic nature of the charges against you?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  All right.

Ms. Wells, let me ask you at this time:  Does Mr. McTaggart want the charges read out loud?  Does he waive reading?

MS. WELLS:  We'll waive the reading and enter a plea of not guilty.

THE COURT:  All right.  While we're waiting for the financial affidavit, let me give the Government some warnings, all right?

So pursuant to Rule 5(f) of the Federal Rules of Criminal Procedure, I remind the Government of its obligation under Brady vs. Maryland as caution to disclose the Defense all information known to the Government whether admissible or not.  That's favorable to the Defendant in which show either to guilt or to punishment.  The Government must make good faith efforts to disclose this information to the Defense as soon as reasonably possible.

I'll be entering an agreement order more fully described as obligation and possible consequences and failing to meet it, and I direct the Government to review and comply with that order.

Does the Government confirm and understands its obligations and will fulfill them?

MR. CHIAPPINI:  Yes, Your Honor.

THE COURT:  All right.  Do we constant notification in this case, Mr. Chiappini?

MR. CHIAPPINI:  No, Your Honor.

THE COURT: Okay.  Is there a proposed bail package, Ms. Wells?

MS. WELLS:  Your Honor, I need more time to put together a bail package.  So at this time, we will consent to detention, and we just ask for leave to reopen.

THE COURT:  All right.  Mr. Chiappini, is the Government seeking detention?

MR. CHIAPPINI:  Yes, Your Honor.

THE COURT:  All right.  What's the basis for detention here?

MR. CHIAPPINI:  The basis for detention is a danger to community and a risk of flight.  And in particular with respect to danger of -- danger to the community, the Defendant is alleged to have committed a violent robbery in which he punched an innocent victim several times in order to obtain a substantial sum of money.

In terms of risk of flight, this obviously carries with it a likely incarceratory term, and the evidence is quite strong.  The Defendant was captured on surveillance

video shortly before and during the crime.

THE COURT:  All right.  Ms. Wells, anything else you want to add on your own?

MS. WELLS:  No, Your Honor.

THE COURT: All right.  Given that no bail package has been presented today in light of the Government's arguments regarding the nature of the crime, defense, and the strength of the evidence, I'll enter an order of detention at this time but give the Defendant an opportunity to make a bail package at the appropriate time if you want to, okay?

MS. WELLS:  Thank you.

THE COURT:  All right.  So we're still waiting for Pretrial Services.  Just give them a minute, okay?

Thank you.

Ms. Wells, do you need a minute?

MS. WELLS:  No, Your Honor.

THE COURT:  All right.  I have in front of me a financial affidavit.

Mr. McTaggart, given the information set forth in this financial affidavit, I'll go ahead and appoint counsel for you, all right?  I'll go ahead and appoint Ms. Wells, Federal Public Defenders, to represent you today and all purposes going forward, okay?  All right.

Ms. Wells, do you accept that appointment?

MS. WELLS:  Yes.

THE COURT:  All right.  And Mr. McTaggart, based on everything that we've discussed so far, is there anything further that you need to discuss with your lawyer at this time?  Or did everything we've discussed so far, did you understand everything so far?

THE DEFENDANT:  Yes.  I understand.

THE COURT:  Here.  One more time.  Let's turn on the microphone.

MS. WELLS:  It's not really working for you to speak up.

THE COURT:  Yeah.

THE DEFENDANT:  I was saying yes, I understand.

THE COURT:  Okay.  All right.

Anything else we need to address today for the Government?

MR. CHIAPPINI:  I would just put on the record, Your Honor, that there is an initial status conference scheduled before Judge Block on June 12th at 2:30 p.m.

THE COURT:  All right.  Anything else for you, Ms. Wells?

MS. WELLS:  We are consenting to the exclusion of time.  And so my client -- we both executed this.

THE COURT:  All right.  Why don't you go ahead and give me the form.

MR. CHIAPPINI:  And, Your Honor, it's listed on the

form.  But just to put on transcript record, the basis for the exclusion of time is for the parties to engage in clean negotiations and to exchange and review discovery.

THE COURT:  All right.  Ms. Wells, just to confirm, have you had a chance to discuss this request of excluding time with your client?

MS. WELLS:  Yes.

THE COURT:  All right.  And do you believe this in your client's best interest to exclude time?

MS. WELLS:  Yes.

THE COURT:  All right.

So, Mr. McTaggart, I have in front of me a application and order of excludable delay.  Just to confirm, did you sign this application?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  And have you had a chance to discuss this application with your lawyer?

THE DEFENDANT:  Yes.

THE COURT:  All right.  And do you know what you are agreeing to by consenting to this order of excludable delay?

THE DEFENDANT:  To my understanding, that --

THE COURT:  I just want to ask if you understand or not.  Yes or no.

THE DEFENDANT:  Yes.

THE COURT:  Okay.  All right.  Well, look.  I want to make sure you fully understand what you're agreeing to by consenting to this order, okay?

Under the Constitution of laws in the United States, the Defendant in a criminal case is entitled to a speedy trial.

Specifically by statute, a trial must begin within 70 days of the latter of the unsealing of this indictment or the Defendant's first appearance in the district of prosecution with certain periods of time excluded from that 70-day calculation.

If trial does not begin within 70 days, that can form the basis of a motion to dismiss the charges against you.  By agreeing to exclude time from today, May 14th through June 12th, 2025, from that 70-day calculation, you are, in fact, agreeing that the speedy trial clock will not be running at all during that period of time.

Therefore, if I -- previous exclusion and if we had made a motion to dismiss the charges on the ground that you had not been brought to trial within 70 days, you would not be permitted to take any count in your calculation period of time from today, May 14th, through June 12th, 2025.

Do you understand all that so far?

THE DEFENDANT:  Yes.

THE COURT: All right.  Now, if you choose to

persist in your not guilty plea and decide to go to trial, as you have an absolute right to do, you could spend additional time in jail awaiting trial.

THE COURT:  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Understanding everything I've said so far, do you still want me to approve this order of excludable delay?

THE DEFENDANT:  Yes.

THE COURT:  All right.  And are you making this decision voluntarily and of your own free will?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Have any promises or threats been made to you to get you to agree to this order of excludable delay?

THE DEFENDANT:  No.

THE COURT:  All right.  At this time, I find the Defendant Mr. McTaggart's consent is knowing, intelligent, and voluntary, and excluding the specified period of time so is the public interest, I'll go ahead and approve the order of excludable delay at this time.

All right.  Mr. Chiappini, anything else from the Government?

MR. CHIAPPINI:  Nothing further from the Government, Your Honor.

THE COURT:  Okay.  Ms. Wells, anything else for the Defendant?

MS. WELLS:  Nothing further.

THE COURT:  Okay.  We are adjourned.  Thank you, everyone.  Have a nice day.

THE DEFENDANT:  Thank you.

MR. CHIAPPINI:  Thank you, Your Honor.

(Proceedings adjourned at 3:02 p.m.)

TRANSCRIBER'S CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

June 6, 2025

*Sherman Rivers*

_____        _____

Sherman Rivers                          DATE

Legal Transcriber

Superior Reporting Services LLC
P.O. Box 5032 Maryville, TN 37802
transcripts@superiorreporter.com

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,    .    Docket No.
                             .    1:25-cr-00151-FB-1
        Government,          .
                             .
             v.              .    Brooklyn, New York
                             .    Monday, May 19, 2025
COREY MCTAGGART,             .    11:19 a.m.
                             .
        Defendant.           .
                             .
. . . . . . . . . . . . . .

TRANSCRIPT OF BOND HEARING
BEFORE THE HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:        U.S. Attorney's Office Eastern
                           District of New York
                           SARAH ELARDO, AUSA
                           271 Cadman Plaza East
                           Brooklyn, New York  11201
                           718-254-6342

For the Defendant:         Federal Defenders of New York
                           KYLA WELLS, ESQ.
                           One Pierrepont Plaza Building
                           300 Cadman Plaza West
                           Floor 10
                           Brooklyn, New York  10007
                           718-254-7000

Also Present:              Corey McTaggart, Defendant

Transcription Service:     Superior Reporting Services LLC
                           P.O. Box 5032
                           Maryville, TN 37802
                           865-344-3150

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

P R O C E E D I N G S

THE CLERK:  Case number 25-cr-151, The United States versus Corey McTaggart.

Counsel, starting with the Plaintiff, can you state your appearances?

MS. ELARDO:  Good morning, Your Honor.  Special assistant United States attorney Sarah Elardo appearing on behalf of the Government standing in for the assigned AUSA, Brooke Theodora.

MS. WELLS:  Federal defender Kyla Wells on behalf of Mr. McTaggart, who's present.  Good morning.

THE COURT:  All right.  Good morning, everyone.  I understand that Mr. McTaggart was arraigned on May 15th and an order of detention was entered, and now the Defendant wishes to make a bail application for release.  Is that right, Ms. Wells?

MS. WELLS:  That's correct.

THE COURT:  I'll hear you on your application.

MS. WELLS:  Your Honor, I am going to ask that you release Mr. McTaggart with some sort of electronic monitoring condition that Your Honor deems appropriate, whether that be a curfew or home detention or even home incarceration.  We would be amendable to any of those options.  I would propose that his mother, who's present in the audience, sign the bond.  She works as a home-health aid.  She makes about

$65,000 a year.  Also here in the audience to support him are his two sisters, as well as his cousin, and his girlfriend is here in the audience as well to support him.

Mr. McTaggart is not a risk of flight.  He has strong community ties.  He's born and raised in New York.  He's been here his entire life.  He's never traveled out of the country.  He doesn't have a passport.  He moved to Jersey City three years ago with his girlfriend, and that's where he's been living prior to his arrest.  He has three children.  Two of them are in New York.  He takes care of his kids.

Until March of 2024 when he lost his last job -- he's been struggling to find work since then -- he's always had a job.  Starting in 2011, he began working in the food industry.  He's held a variety of positions such as a chef at Long Island University, a prep chef at Hook and Reel's Seafood Restaurant.  He's been a supervisor at a catering company, among other positions.  So he's always held a job, and he's eager to get back into working in the food industry.

And I understand that Mr. McTaggart has a criminal history.  I will just note that a majority of his convictions occurred when he was 20 and 21 years old.  He wasn't arrested between 2016 and 2024, which to me demonstrates an effort to change and to do something different.  During that time, he was working, supporting his family.  In 2024, he was arrested

for unlicensed driving.  That resulted in an infraction, not a criminal conviction, and he had to pay a fine.  I see that there's a bench warrant there for the fine, Judge.  But to me that indicates that he made all of his court appearances.  He just hasn't paid the fine.

If it makes sense, Your Honor, as a part of the conditions of his release, he can be told that he needs to take care of this $75 fine.  He also has an active warrant out of New Jersey for what appears to be a misdemeanor, and this is from 2004.  A bond has been set at $1,000.  I believe he just needs to post $100 in order to take care of this particular warrant.  I've discussed this with him.  If he's released, upon his release he will report immediately to the Jersey City Municipal Court to take care of this warrant, Judge.  And he understands the importance of returning to court in this case.

He's never been on any sort of electronic monitoring for any of his cases in the past.  I think any concerns that the Court may have about his risk of flight or the warrants that he had in the past, I think that can be ameliorated through electronic monitoring and pre-trial supervision.  I'll also note that he's not a danger to the community.

The current case, I believe, it involves an allegation that he punched someone in the face, which is

although very serious, there were no weapons involved in this robbery.  No knife or gun or anything like that.  The domestic violence incident is a misdemeanor, and I believe the allegation is that he caused an abrasion to someone's arm.

Judge, but given that he had stayed out of trouble for quite some time before picking up these recent arrests, Judge, I believe that electronic monitoring will be sufficient to ensure his release from court as well as to protect the community, Your Honor.  So I'd ask that you consider releasing him.

THE COURT:  Okay.  So well, I'll hear from the Government.

MS. ELARDO:  Thank you, Your Honor.  It was the Government's original position, and we reiterate that position, that we believe the Defendant is entitled to detention pursuant to 3142(f)(1)(A) as the crime that is alleged in the indictment is a crime of violence.

It's the Government's position that the -- based on the Defendant's criminal history, the strength of the case if we were to proceed to trial, again, and the evidence against the Defendant, that the Defendant is a danger to the community, and based on the previous bench warrant history, that the Defendant does pose a flight risk.

If the Defendant is convicted of these crimes, Your

Honor, he does stand pursuant to the guidelines -- one moment. His guideline range would be 63 to 78 months of incarceration, and that time of incarceration does in and of itself pose a flight risk for this defendant to flee these charges as well. And we rely on the original arguments that were made. But for these reasons, we would argue that detention should be ordered in this case.

THE COURT: All right. Thank you.

So, Ms. Wells, I have some questions for you. Your client has these bench warrants in the past. So it looks like in 2016, he was charged with robbery aided by a -- with a use of a weapon. This bench warrant was issued in August 2016. He was returned on the warrant a little more than a month later. And then as you mentioned, he was 20 at that time. And then in 2016 -- in September 2016, it's listed here that he was a fugitive from justice. So I'm not sure how that works since he was returned on the warrant the day before. So was he a fugitive for some other case or the same case?

MS. WELLS: So it appears to me, Judge, that he might have been charged with whatever New Hampshire's -- oh, it's New Hampshire, not --

THE COURT: Yeah.

MS. WELLS: Oh, you know what I think it was. I think this might have been a removal from New Hampshire, and

Superior Reporting Services LLC
P.O. Box 5032 Maryville, TN 37802
transcripts@superiorreporter.com

that's how he was removed from there back to New York.  To clear up the warrants.

THE COURT:  Okay.  So he was in New Hampshire --

MS. WELLS:  Yeah.

THE COURT:  -- at that point?

MS. WELLS:  So I think that's what that was.  I don't believe it was an additional charge for something.  And then it was nol prossed.

THE COURT:  Okay.  And so that criminal conviction was for acts committed in New Hampshire?

MS. WELLS:  I don't think so.

THE COURT:  No?

MS. WELLS:  I think he was just removed --

THE COURT:  But he was charged in New Hampshire?

MS. WELLS:  Yeah.  I believe he was charged.  Just like here if somebody were to have a, you know -- need to move to New Hampshire, and they were arrested here, there would be a case here.  A removal would be filed here for the case in another jurisdiction.  I think that's the state equivalent of what we're dealing with here.  I don't think he -- on the 30th, like, picked up some additional charge.

THE COURT:  Right.

MS. WELLS:  So they just removed him to New York.

THE COURT:  Okay.  I think I understand what you're saying.

MS. WELLS:  Okay.

THE COURT:  But for some reason, your client had enough connections with New Hampshire that he was charged with criminal activity there.  That's what I'm seeing.

MS. WELLS:  Yes.

THE COURT:  Yes.

MS. WELLS:  Yes.

THE COURT:  Okay.  And then there's a gap as you mentioned between 2016 and 2024.  But he was sentenced to a term of 42 months on the charge in 2016, so when was he released from custody?

MS. WELLS:  He was released --

THE COURT:  Oh, go ahead.

MS. WELLS:  -- January 9th of 2020.

THE COURT:  Okay.

MS. WELLS:  So he did stay out of trouble for several years.

THE COURT:  Okay.  So it's about five years --

MS. WELLS:  Yes.

THE COURT:  -- before -- a little over four years.  And then you have the motor vehicle violation for which he did not show up in court, which is why the bench warrant was issued --

MS. WELLS:  So I believe he didn't --

THE COURT:  -- in August 2024.

MS. WELLS: Yes. I believe he showed up to court, and he pled to a traffic infraction rather than a criminal charge. And he was ordered to pay a fine, and I believe the warrant was issued because he didn't pay the fine --

THE COURT: I see it.

MS. WELLS: -- not for his failure to show up to court.

THE COURT: So the bench warrant issued is -- are you saying not for not showing up, but for --

MS. WELLS: For failing to pay the fine.

THE COURT: Okay. So in that court a bench warrant gets issued if somebody doesn't pay a fine?

MS. WELLS: Yes.

THE COURT: Okay. And then the domestic violence incident, I -- it looks like it would be connected to the temporary protection order, or is that something different?

MS. WELLS: So I don't have a lot of information about the protective order, Judge, but I see the protective order is from Queens, and the domestic violence incident is in New Jersey. I don't believe that they are connected. But I don't have information beyond what's here in terms of the protective order.

THE COURT: All right. So the active bench warrant is -- that's still active?

MS. WELLS: It is active, Judge. And I understand

that's an issue.  But I will note that it is for what appears to be a misdemeanor charge --

THE COURT:  Right.

MS. WELLS:  -- just given what's described and that the bond is only $1,000.

THE COURT:  Yeah.  But still your client was supposed to show up, and it's -- you said he lives in Jersey City, so it wasn't difficult for him to get to --

MS. WELLS:  Yes.

THE COURT:  -- Jersey City Municipal Court.  He knew he was charged, and he didn't show up.  So that causes me concern.  It's not about fleeing the country.

MS. WELLS:  Yes.

THE COURT:  It's just his reliability in terms of showing up for his court appearances.

MS. WELLS:  I understand that.  And I think that that concern can be addressed through electronic monitoring as well as pretrial -- you know, he's never been subject to pretrial service.  In state court, they don't really have anything like that.

THE COURT:  I know.  But if somebody doesn't voluntarily show up, and you're saying, as long as we keep an eye on him, then he'll show up.  As long as there are consequences and people are monitoring him, he'll show up.  That doesn't sound very convincing in terms of your client's

willingness to actually show up, right.  Because you're supposed to do the right thing even when nobody's watching you.  So I'm not sure I get that argument.  I don't know that he has a good excuse for not tending to his Jersey City criminal case.

MS. WELLS:  Yeah.  And I understand Your Honor's concern.  I get that he should have.  And I had a long conversation with him about this.  That he should have taken care of his obligations in Jersey City, and there's really no excuse for that.  But I don't believe that that means that he's not going to show up in this -- on this matter.  He understands the seriousness of it.

THE COURT:  But domestic violence cases is serious.

MS. WELLS:  It is absolutely serious.

THE COURT:  Okay.

MS. WELLS:  But I think that the -- I don't exactly know how everything transpired there in Jersey City or how that jurisdiction works.  But just given the conditions at the MDC, Judge, right now, and --

THE COURT:  I know the conditions at MDC.

MS. WELLS:  Yes.

THE COURT:  But the big issue for me is your client's taking criminal cases in whatever court seriously.  And he was, according to what I'm seeing here, charged in Jersey City with domestic violence and was supposed to show

up in court and didn't.  And didn't turn himself in or tend to that to this day.  And then even here there is the Queens County Family Court temporary protection order, which was issued in February.  So after that domestic violence case was brought and there was a bench warrant issued for his failure to appear in court, nonetheless, for whatever reason -- and I don't know who this person is.  You don't have to say the name out loud, but is that the subject of the domestic violence incident or somebody different?

            MS. WELLS:  No.  No.  It's not.

            THE COURT:  You said it's different.  And is that one of the current people that you've mentioned is here in court?

            MS. WELLS:  No.

            THE COURT:  Or is that a different person?

            MS. WELLS:  No.

            THE COURT:  Okay.

            MS. WELLS:  No.

            THE COURT:  So whatever it is while a criminal case was pending, nevertheless a court found it appropriate to issue a temporary protection order against your client.

            MS. WELLS:  Yes.  Well, Your Honor, I understand that a protection order was issued here.  But I will note that a family court issued it rather than a criminal court.  And a family court can issue an order of protection.  It does

not necessarily mean that there were criminal allegations for that order of protection to be issued, so --

THE COURT:  What is the protection about?

MS. WELLS:  I don't want to speculate, Judge.

THE COURT:  Yeah.  But your client's there.  He doesn't know?

MS. WELLS:  He says that it has to do with a custody battle that he's --

THE COURT:  Okay.

MS. WELLS:  -- currently dealing --

THE COURT:  Okay.

MS. WELLS:  -- between his child's mother and the custody of their children.

THE COURT:  I'm sorry.  I don't know what is happening with the microphone.

UNIDENTIFIED VOICE:  :  I'm sorry.  I think it's me.  I'm sorry.  I was too close to it.

THE COURT:  Oh, okay.  Please put the microphone away, so we don't get interference.

Okay.  So you're saying it's something different?

MS. WELLS:  Yes.

THE COURT:  It's a custody issue?

MS. WELLS:  Yes.  It's a custody issue.

THE COURT:  Okay.

MS. WELLS:  Yes.

THE COURT:  So it could be something like don't have contact with your children until we figure out the custody issue?

MS. WELLS:  Yes.

THE COURT:  Okay.  All right.  And then I also see here a resisting arrest related to the Jersey City charge?

MS. WELLS:  I do see that, Your Honor.  These are merely allegations.  You know, he hasn't pled guilty to these charges.

THE COURT:  Well, that's part of the issue is that he hasn't tended to the issues at all.

MS. WELLS:  Yes.

THE COURT:  He just ran away from them.

MS. WELLS:  Yes.  And I understand, Your Honor's concern, but I do believe that the least restrictive means to ensure his return to court is home incarceration or home detention.  I don't believe that -- I believe that incarceration exceeds the least restrictive means.  I believe if he's under electronic monitoring he will return to court.

THE COURT:  And where are you proposing that your -- you're proposing that your client remain living in Jersey City with his girlfriend?  And would she allow him to be there 24/7 under home incarceration?

MS. WELLS:  Yes.  So his mother, who's signing the bond, would like him to live with her.  And she lives in

Connecticut.  She lives off of the train and can --

THE COURT:  I am not inclined to let your client leave this jurisdiction.

MS. WELLS:  If that's the case, then he can live where he'd been living in -- but he's always lived in Jersey City.  But he can live in Jersey City, which is a quick train ride to the City.

THE COURT:  I don't want to ask you questions inappropriately.  But I'm wondering why you're -- there's this issue about where he -- your client would be living?

MS. WELLS:  If I may have a brief moment to speak with his family?

THE COURT:  Yes.

MS. WELLS:  Okay.

THE COURT:  Is this all we have for this morning or is there another case?

THE CLERK:  There's another case.

THE COURT:  Okay.  Let's take a short recess on this case.

MS. WELLS:  Okay.

THE COURT:  We'll call it again --

MS. WELLS:  Thank you.

THE COURT:  -- once you have a chance to get some details ironed out.

MS. WELLS:  Thank you.

THE COURT:  All right.  Thank you.

(Recess)

THE CLERK:  Case number 25-cr-151, United States versus Corey McTaggart.  Counsel, starting with the Plaintiff, please state your appearances.

MS. ELARDO:  Good morning, Your Honor.  Special assistant United States attorney Sarah Elardo appearing on behalf of the Government.

MS. WELLS:  Federal defender Kyla Wells on behalf of Mr. McTaggart.

THE COURT:  All right.  And, Ms. Wells, you have some more information?

MS. WELLS:  Yes.  Thank you for the second call.  I apologize for not having this ironed out sooner.  But I did speak with his family.  He can stay with his girlfriend. That's where he's been living over the past few years. That's not a problem.  He lives there with his girlfriend, his girlfriend's mother, and her children.  And he can return to that residence.  That's not an issue.  His mother is still willing to sign a bond.  His girlfriend's willing to sign a bond as well.

THE COURT:  Okay.  And just to be clear, the domestic violence incident is not against this girlfriend?

MS. WELLS:  I don't have information about that, Judge.

THE COURT:  Okay.

MS. WELLS:  Yes.

THE COURT:  If it is, I'm not having your client be released to live with the person that is the victim of a pending case.

MS. WELLS:  Just some reason.  Give me a second.

Your Honor, I was under the impression that this incident had nothing to do with her, and that was a false impression.  And so it does in fact have to do with her.  I apologize to the Court if I did not realize that.  I would just note that there's no order of protection issued by that court that says that he cannot live with her, and he's been living with her since then.  But he can live with his mother, who lives -- I realize that she lives in Connecticut.  But I believe she lives in the portion of Connecticut that's considered a New York suburb.  She lives off the train.  She takes the train into the City for work.

THE COURT:  Yeah.  But your client has never lived there, right?

MS. WELLS:  Well, he lived with her growing up.  I mean, he lived -- when they lived in the City, he grew up living with his mother.  So it's not that he's never lived with her.  It's just that since she's been living in Connecticut, he has not lived there.

THE COURT:  So it's a community that he's never

lived in.  That's my point.

MS. WELLS:  No.  He's never lived in Connecticut. But if he's on home detention or something of that nature, home incarceration, I mean, he'll be confined to the home in any event.

THE COURT:  I'm just going to ask pretrial services.  Is this something that you've been presented with for you to consider?

UNIDENTIFIED VOICE:  Your Honor, we're just hearing about the potentiality of him residing in Connecticut.  As Your Honor is aware, we have supervised individuals in other states.  That's the norm for us, Your Honor.  So if Your Honor is inclined to release the Defendant, we can ask for courtesy supervision from the district of Connecticut.

THE COURT:  Okay.  This has put me in a tough position because, Ms. Wells, because I have no indication of the -- your client being released to a different district. In a district where he has no ties.  Home incarceration, I agree, it means he would be indoors.  Nevertheless, a person resides in that community, and so --

MS. WELLS:  Well, I will add, Judge, that though he's never lived with his mother in Connecticut, he did grow up with her and her siblings.  And that he has, you know, gone to visit his mother in Connecticut since she's been living there.  It's not like he's never stepped foot in

Connecticut.  He has maintained a relationship with his mother as she lived in Connecticut.  He just wasn't living there.  So he's been to Connecticut.  He's familiar with the area.  He just hasn't lived there.

THE COURT:  All right.

MS. ELARDO:  And, Judge, the Government would oppose --

THE COURT:  Yes.

MS. ELARDO:  -- the Defendant being released to a different jurisdiction.  There's evidence alone that this defendant has difficulty appearing in jurisdictions in which he is living within.  And to allow him the opportunity when he has given this court no other evidence other than he is indeed a flight risk.  To allow him to go a different jurisdiction is something that we would heavily oppose.

THE COURT:  Yeah.  All right.  I am not convinced that this client or that this defendant, Mr. McTaggart, is likely to appear in court or indeed that he's going to abide by the conditions that I impose including home incarceration.  He's going to be living in a community that is not in this district, a residence where he has not lived before, and where I have no indication he has ties other than that his mother lives there.  At some point, if he's released there, he will have to come to this district to appear in court.  He has not shown his reliability in showing up to criminal court

cases.  Even in the same city where he was residing, let alone getting on a train and coming down here to appear in this court.  It's not about his fleeing the country.  I get that point that he's not likely to flee the country.  But just because I don't want to put the Government in the position where they to track him down and bring him in.

Based on his history with the bench warrants, his recent bench warrant, which is a pending one in Jersey City, I still find that Mr. McTaggart is a flight risk.  So I deny the application to have him released.

MS. WELLS:  Thank you, Your Honor.

THE COURT:  Yeah.  Thank you.

THE CLERK:  Thank you.

(Proceedings adjourned at 12:03 p.m.)

TRANSCRIBER'S CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

*Nina Winters*                          June 7, 2025

_____          _____
Nina Winters                            DATE

Legal Transcriber

Superior Reporting Services LLC
P.O. Box 5032 Maryville, TN 37802
transcripts@superiorreporter.com